UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
IN RE APPLICATION OF MIHAILS
ULMANS FOR JUDICIAL FOR                   **REPORT & RECOMMENDATION**
JUDICIAL ASSISTANCE PURSUANT                 23-mc-00023 (GHW) (VF)
TO 28 U.S.C. § 1782,
------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge**

**TO: THE HONORABLE GREGORY H. WOODS, United States District Judge.**

Applicant Mihails Ulmans submitted an application for judicial assistance pursuant to 28 U.S.C. § 1782, seeking appointment of Arthur D. Middlemiss as Commissioner of the Court to issue subpoenas to correspondent banking institutions in this District for documentary evidence for use in a foreign criminal proceeding pending in the Riga City Court in Riga, Latvia. See ECF Nos. 1, 3-4. For the reasons that follow, I recommend that the application be **GRANTED**.

## BACKGROUND

A. Factual Background[1]

Ulmans, who is 69 years old, is a Latvian national who resides in Riga, Latvia. Zelmenis Decl. ¶ 4. On May 24, 2022, Latvian authorities arrested Ulmans on suspicion of participating in a scheme to murder Martins Bunkus, a Latvian insolvency administrator who was killed on May 30, 2018. Id. ¶¶ 5, 9, 17, 19. On December 5, 2022, Latvian prosecutors formally charged Ulmans with inciting an organized group to commit murder.[2] Id. ¶¶ 12, 19; see also ECF Nos. 4-

---

[1] The facts recounted herein are taken from the Declaration of Janis Zelmenis, a Latvian attorney who submits the declaration in support of Ulmans' Section 1782 application for judicial assistance. See ECF No. 4 ("Zelmenis Decl.").

[2] As the Zelmenis declaration explains, the formal criminal charges against Ulmans are contained in the "Charging Decision," which is "not the product of a grand jury inquiry or the finding of an impartial judicial authority." Zelmenis Decl. ¶ 12. The "Charging decision" is an

1

5, 4-6. According to police allegations, Ulmans "was the person, or one of the persons, who directed and paid for the murder" of Bunkus. Zelmenis Decl. ¶¶ 17-19. Latvian authorities have also arrested other individuals in connection with Bunkus' murder. Id. ¶ 17. Under Latvian criminal procedure law, Ulmans is entitled to judicial review of his pretrial detention every two months. Id. ¶ 16.

B. The Instant Application

On January 26, 2023, Ulmans filed the instant application, seeking the appointment of Arthur D. Middlemiss as a Commissioner of the Court to issue subpoenas to obtain documentary evidence from correspondent banking institutions located in this District.[3] See ECF Nos. 1, 3-4. Specifically, Ulmans seeks records of international financial transactions involving Bunkus held by correspondent banking institutions with offices in New York.[4] Zelmenis Decl. ¶ 23. Ulmans

---

accusation made by the Latvian prosecutor's office and therefore is akin to a criminal complaint. Id.

[3] Although the application appears to request authority to issue subpoenas for testimonial evidence and a far broader swath of documentary evidence, see ECF No. 3 at 1, 13, Ulmans' counsel at a conference with the Court represented that the scope of the subpoenas the Commissioner intends to issue will be far narrower and limited to specific documentary evidence. See infra at 4.

[4] "Correspondent banking" refers to the agreements and relationships between financial institutions to provide payment services across international borders. ECF No. 3 at 3. For example, when an account holder in one country (the originator) wishes to send funds to a recipient in another country (the beneficiary), the funds are sent from the originator's bank account to the beneficiary's bank account through a network of accounts at correspondent banks. Id. at 4. The transfer thus causes a series of "credits and corresponding debits between correspondent accounts" until the money reaches the beneficiary's bank. Id. It is this "paper trial" of debits and credits that Ulmans seeks to uncover through his request for discovery.

2

believes that the requested discovery will lead to "the discovery of exculpatory evidence," which he can use in his detention-review hearing and upcoming criminal trial. Id. ¶¶ 16, 23-24.

As Zelmenis explains in his declaration, Bunkus worked as an insolvency administrator, which allowed him to "oversee the dissolution of bankrupt businesses, including financial institutions in Latvia" and gave him discretion to "allocate assets amongst creditors and accountholders at the liquidating entities." Id. ¶ 24. Zelmenis posts that as an insolvency administrator, Bunkus would have "come into conflict with multiple dangerous individuals" and would have been in a position to demand (and likely did demand) "significant kickbacks" from creditors and accountholders in exchange for the "favorable disposition of assets." Id. ¶¶ 24-29. Bunkus held accounts with numerous banks and his business affairs "included regular international financial transactions. Id. ¶¶ 31-34. According to Zelmenis, if Bunkus transferred any U.S. dollar denominated payments overseas using these bank accounts, the transfer would have initiated a series of credits and debits among the accounts of correspondent banks. Id. ¶ 35; see also ECF No. 3 at 3-5. And, international wire payments denominated in U.S. dollars generally pass-through correspondent accounts maintained at U.S. correspondent banks. ECF No. 3 at 5. Consequently, Ulmans believes that the requested discovery will identify individuals who sent money to Bunkus and "such individuals may be alternative suspects in his murder," given Bunkus' role in "alleged kick-back scheme[s]." Zelmenis Decl. ¶ 36.

By order dated January 28, 2023, the application was referred to the undersigned for resolution. See ECF No. 6. Although Ulmans filed a form consenting to my jurisdiction under 28 U.S.C. § 636(c), the consent was ineffective because "all parties" did not voluntarily consent, as the correspondent banks from whom Ulmans seeks discovery have not consented to my jurisdiction. See ECF No. 9. On April 20, 2023, the Court held oral argument on the application.

See ECF No. 12. As counsel for Ulmans represented at the conference, Ulmans seeks the ability to issue subpoenas to correspondent banking institutions located in this District to obtain specific transaction records—transaction logs and swift messages[5]—for transactions made for the benefit of, or in the name of, Bunkus or his family office, Bunkus Birojs Sia.

As a threshold matter, I must examine whether the instant motion seeks relief that is non-dispositive in nature, and consequently within my non-consensual purview, or instead dispositive and beyond my authority to resolve via an opinion and order absent consent of the parties under 28 U.S.C. § 636(c). Numerous judges of this Court have previously concluded that a magistrate judge has the authority to decide a motion under Section 1782, seeking discovery in aid of a foreign proceeding, by opinion and order, because such motions are not "dispositive" within the meaning of Federal Rule of Civil Procedure 72. See, e.g., In re Hulley Enters., Ltd., 358 F. Supp. 3d 331, 340-42 (S.D.N.Y. 2019), aff'd, 400 F. Supp. 3d 62 (S.D.N.Y. 2019) (application brought under Section 1782 is "non-dispositive" matter within meaning of Federal Rule of Civil Procedure 72(b)); see also In re Evenstar Master Fund SPC for & on behalf of Evenstar Master Sub-Fund I Segregated Portfolio, No. 20-MC-418 (CS) (JCM), 2021 WL 5498283, at *1 (S.D.N.Y. Nov. 23, 2021) ("[R]ulings on § 1782 applications are [ ] nondispositive matters.").

Recently, however, the Second Circuit concluded that it "lack[ed] jurisdiction" over a "magistrate judge's nonfinal order" denying a Section 1782 application and remanded the matter to the district court for "the magistrate judge's order [to] be treated as a report and recommendation." See Associacao dos Profissionais dos Correios v. The Bank of N.Y. Mellon Corp., No. 22-2865 (2d Cir. Mar. 28, 2023). To be sure, the Second Circuit's one-paragraph

---

[5] "SWIFT" is an acronym for the "Society for Worldwide Interbank Financial Telecommunication," which hosts a universal messaging system allowing for secure communication services between banking institutions worldwide. ECF No. 3 at 4.

decision is a non-precedential summary order lacking any explanation as to why resolution of a Section 1782 application should be treated as "dispositive" within the meaning of Rule 72, thereby requiring a report and recommendation. Further, a persuasive argument exists that the term "dispositive matters" in Rule 72(b) was not intended to capture motions, such as this one, seeking discovery under Section 1782. See In re Hulley, 358 F. Supp. 3d at 341. And moreover, Associacao may be distinguishable because the magistrate judge in that case denied the Section 1782 application (rather than granting it), although the Second Circuit's decision draws no such distinction.

In any event, I am not at liberty to disregard the Second Circuit's ruling merely because it was rendered in a summary order, particularly where, as here, the ruling was made in a case that is "squarely on point" because it also involved a Section 1782 application. See United States v. Tejeda, 824 F. Supp. 2d 473, 474-75 (S.D.N.Y. 2010) (collecting cases). "Though the application of such holdings is technically circumscribed by the immediate case adjudged, the decisions nonetheless constitute valuable appellate guidance." See id. at 475; see also Mendez v. Starwood Hotels & Resorts Worldwide, Inc., 746 F. Supp. 2d 575, 595 (S.D.N.Y. 2010) (reasoning that a summary order, although lacking "precedential effect on any court," provides "some indication of how the Court of Appeals might rule were it to decide the issue in a binding opinion"). Accordingly, rather than treating the Section 1782 application as a non-dispositive matter for which I can issue an opinion and order, I treat the instant application as dispositive, for which Rule 72 requires the issuance of a report and recommendation.

**DISCUSSION**

Under 28 U.S.C. § 1782,

> [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

A district court has jurisdiction to grant an application under Section 1782 if the following statutory requirements are met: "(1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or any interested person." Kiobel by Samkalden v. Cravath, Swaine & Moore, LLP, 895 F.3d 238, 243 (2d Cir. 2018) (cleaned up); see also In re Application of Microsoft Corp., 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006) (citing Schmitz v. Bernstein, Liebhard & Lifshiftz, LLP, 376 F.3d 79, 83 (2d Cir. 2004)); Federal Republic of Nigeria v. VR Advisory Servs., Ltd., 27 F.4th 136, 148 (2d Cir. 2022). Additionally, the statute requires that the discovery not be "in violation of any legally applicable privilege." Mangouras v. Squire Patton Boggs, 980 F.3d 88, 97 (2d Cir. 2020) (quoting 28 U.S.C. § 1782(a)); In re Guo, 965 F.3d 96, 102 n.3 (2d Cir. 2020) ("While our case law has often focused on the[ ] three elements" stated above, "the statute also imposes other requirements, including that the discovery not be 'in violation of any legally applicable privilege.'").

Provided that the statutory requirements in Section 1782 are met, a court then determines, in its discretion, whether the discovery should be permitted. Kiobel, 895 F.3d at 244; Federal Republic of Nigeria, 27 F.4th at 148. The Supreme Court has identified four discretionary factors

6

(referred to as the Intel factors) that a court considers when ruling on a Section 1782 request: (1) whether the person from whom the discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the Section 1782 application contains unduly intrusive or burdensome discovery requests. See Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004). Courts must exercise their discretion in light of the "twin aims" of Section 1782: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts." Id. at 252 (citation omitted).

Further, although the correspondent banks from whom Ulmans may seek discovery are not yet parties to this application, "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*." Gushlak v. Ghushlak, 486 F. App'x 215, 217 (2d Cir. 2012). As the Second Circuit has explained, a respondent from whom discovery is sought "can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." Id. Finally, a district court may also approve an ex parte Section 1782 application that requests an order appointing a commissioner to collect discovery, as is sought here. See, e.g., Matter of Makhpal Karibzhanova, No. 21-MC-442 (KPF), 2021 WL 2435453, at *2 (S.D.N.Y. June 15, 2021).

    A.  Ulmans' application satisfies the statutory factors under Section 1782.

Ulmans has satisfied all three statutory requirements under Section 1782. First, the application requests that this Court appoint a Commissioner to subpoena documents only from

7

parties located within the Southern District of New York. See ECF No. 3 at 1, 13. The first statutory factor is therefore satisfied.

Second, the requested discovery satisfies the "for use" requirement in Section 1782. The term "for use" is afforded a "broad interpretation," and the "sought-after evidence need not be admissible or even discoverable under the rules of the foreign jurisdiction." Deposit Ins. Agency v. Leontiev, No. 17-MC-00414 (GBD) (SN), 2018 WL 3536083, at *3 (S.D.N.Y. July 23, 2018) (internal citations omitted). An applicant need only show that he has "the practical ability to inject the requested information into a foreign proceeding." In re Accent Delight Int'l Ltd., 869 F.3d 121, 131-32 (2d Cir. 2017); see also In re Kingstown Partners Master Ltd., No. 21-MC-691 (LTS), 2022 WL 1081333, at *5 (S.D.N.Y. Apr. 8, 2022) (noting that the "for use" requirement is "afforded a broad interpretation" and is satisfied if "materials sought are to be used at some stage of a foreign proceeding") (internal quotation marks omitted).

Ulmans was arrested in Latvia and has been formally charged with a crime. Zelmenis ¶ 12. And as Zelmenis—a Latvian attorney familiar with the Latvian legal system—attests in a sworn declaration, Ulmans will be able to use the requested discovery, in the first instance, during his detention-review hearing to counter the prosecution's request for his continued pretrial detention, and subsequently, at his trial to prove his innocence of the charged crime. Zelmenis Decl. ¶¶ 2, 16, 23. Further, Zelmenis attests that Latvian criminal procedure law does not bar the presentation of such evidence during the detention-review hearing, and that Latvian courts would permit admission of such evidence during Ulmans' anticipated criminal trial. Id. ¶ 16. Latvian courts will therefore be able to consider the evidence sought by Ulmans through this application. Accordingly, Ulmans has satisfied the second statutory factor by establishing that the discovery sought is for use in a foreign criminal proceeding.

Third, Ulmans is plainly an "interested person" for purposes of Section 1782 by virtue of his status as a defendant in the Latvian criminal proceeding. See Intel, 542 U.S. at 256 ("No doubt litigants are included among . . . the 'interested person[s]' who may invoke § 1782."); see also In re Application of Esses, 101 F.3d 873, 875 (2d Cir. 1996) (finding that the language of Section 1782 is clear that a person who is a party to a foreign proceeding satisfies the "interested person" requirement); In re Furstenberg Finance SAS, 785 F. App'x 882, 885 (2d Cir. Aug. 30, 2019) (summary order) (affirming determination that applicants were interested persons in light of affidavits indicating that they would be parties to foreign criminal proceeding and would "submit the relevant evidence directly" in that proceeding). The third and final statutory factor is therefore satisfied.

    B.  Ulmans' application also satisfies the discretionary factors under Section 1782.

Once the statutory requirements are met, a district court has discretion to determine whether, and to what extent, to honor a request for assistance under Section 1782. See Intel, 542 U.S. at 264. A district court acts within its discretion so long as it fashions its order in accordance with the "twin aims" of Section 1782—"providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." In re Application of Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992); see also In re Application of Gianoli Aldunate, 3 F.3d 54, 61-62 (2d Cir. 1993); In re Application of Asher B. Edelman, 295 F.3d 171, 181 (2d Cir. 2002) ("Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to § 1782(a)—both over whether to grant a discovery order and, if so, what limits to place on that discovery."). As explained below, all of the discretionary

9

factors weigh in favor of granting the application for appointment of a Commissioner to aid Ulmans in obtaining the sought-after discovery in this District.

1. *Participation in the foreign proceeding*

The first Intel factor provides that "when the person from whom discovery is sought is a participant . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." Intel, 542 U.S. at 264. Ulmans seeks discovery from correspondent banks with offices in this District. And the discovery is for use in Ulmans' criminal proceeding in Latvia—a proceeding to which the banks are not a party. See ECF No. 4 at 10. Moreover, even if the banks have a branch in Latvia, Ulmans seeks discovery about "clearing transactions" denominated in U.S. dollars. Id. at 3-5. Those transactions would occur through a bank's branch in the United States, id. at 10, and consequently the information Ulmans seeks through this application "may be outside the foreign tribunal's jurisdictional reach." Intel, 542 U.S. at 264. The first factor thus weighs in favor of granting Ulmans' application for Section 1782 discovery.

2. *The nature of the foreign tribunal and character of the proceedings underway*

The second Intel factor provides that a district court ruling on a Section 1782 application may consider "the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Intel, 542 U.S. at 264. "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1102 (2d Cir. 1995). A court should deny discovery on the basis of lack of

receptiveness only where it is provided with "authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." Id. at 1100.

This factor, too, weighs in favor of granting the application. First, Ulmans has been formally charged with a crime in Latvia, and the pending criminal proceeding for which Ulmans seeks discovery is undoubtedly adjudicative in nature. See In re Eurasian Bank, No. 19-mc-00568 (RA), 2020 WL 85226, at *1 (S.D.N.Y. Jan. 2, 2020) (granting Section 1782 application where discovery was for use in "an ongoing Kazakhstani criminal investigation"); In re Wilhelm, 470 F. Supp. 2d 409, 411 (S.D.N.Y. 2007) (granting Section 1782 application where an "adjudicative proceeding, which is to say a formal accusation, against the individuals in question lies within reasonable contemplation"). Second, there is no indication that the Latvian courts are not receptive to judicial assistance from U.S. courts. To the contrary, Ulmans posits that Latvian courts are receptive to Section 1782 assistance. See Zelmenis Decl. ¶ 16. More specifically, Zelmenis, an attorney qualified to practice in Latvian courts, attests that under Latvian law, Ulmans will be able to use the requested discovery during his detention-review hearing and his criminal trial. Id. ¶¶ 2-3, 16. Indeed, Zelmenis explains that "[t]here is no categorial prohibition on either the gathering or the presentation of external evidence" during the detention-review process or criminal trial, and therefore "any information identified through the current application . . . would be properly presented for admission in the Latvian courts." Id. ¶ 16. Ulmans has thus demonstrated that a foreign court will be receptive to the evidence he seeks through the instant application.

    3. *Attempt to circumvent foreign proof-gathering restrictions and policies*

The third Intel factor seeks to identify "attempt[s] to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Intel, 542 U.S. at 264-65.

Section 1782, however, does not limit a district court's authority to require the production of documents "to materials that could be discovered in the foreign jurisdiction if the materials were located there." In re Hansainvest Hanseatische Inv.-GmbH, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018). Here, there is no indication that any proof-gathering restrictions exist that would prevent this Court from granting the application. This factor therefore also weighs in favor of granting Ulmans' application.

    4.  *Unduly burdensome request*

The final Intel factor directs courts to be mindful of overly intrusive or burdensome discovery requests. Intel, 542 U.S. at 264-65. "[A] district court evaluating a [Section] 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." Mees, 793 F.3d at 302. As the Second Circuit has explained, if a court has "misgivings . . . about the impact of its participation in the foreign litigation," it is preferable for the court to issue "a closely tailored discovery order rather than . . . simply denying relief outright." Euromepa, 51 F.3d at 1101.

Here, Ulmans' application does not suggest an anticipated course of conduct that will be unduly burdensome to the banks. To the contrary, through the subpoenas, Ulmans seeks two specific types of documentary records (transaction logs and swift messages) that are maintained by correspondent banks in the ordinary course of business, are computerized and thus searchable, and can be retrieved via the use of narrow search terms. See ECF No. 3 at 4-5. Moreover, should a bank served with a subpoena conclude that the requests are unduly burdensome, the bank may challenge the subpoena by moving to quash under Federal Rule of Civil Procedure 45. See Gushlak, 486 F. App'x at 217.

In sum, the application satisfies both the statutory requirements under Section 1782 and the Intel discretionary criteria.

## **CONCLUSION**

For the reasons set forth above, I recommend that Ulmans' application pursuant to Section 1782 be granted. I recommend that the Court appoint Arthur D. Middlemiss as Commissioner. I further recommend that Middlemiss be vested with the authority to issue subpoenas to correspondent banks located in the Southern District of New York and that the subpoenas be limited to documentary evidence in the form of transaction logs and swift messages for transactions for the benefit of, or in the name of, Martins Bunkus or his family office, Bunkus Birojs Sia.

DATED:   New York, New York
         April 20, 2023

_____
VALERIE FIGUEREDO
United States Magistrate Judge